## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TERRENCE C. AUSTIN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.    07 C 3184 |
| | ) | Blanche M. Manning |
| | ) | |
| COOK COUNTY and | ) | |
| ANTHONY PERAICA, | ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

Terrence G. Austin sued Cook County and Anthony Peraica for violations of the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq*. Each side moves for summary judgment. For the reasons stated herein, the motions are denied.

**Facts**

From 1991 to 2005, Austin was an employee of various Cook County departments. Anthony Peraica ran for and was elected a Cook County Commissioner in November 2002 and remained in that position until December 2010. Peraica had three employees who were paid from the budget for his office as a county commissioner. After Peraica was elected, Austin was transferred from his position of Administrative Assistant V in the Facilities Management department to Administrative Assistant V for defendant Peraica. Austin contends that his position was called "administrative assistant." Pat Austin, Austin's mother and Peraica's secretary when he was a commissioner, testified at her deposition that some people called Austin's position "chief of staff" while others referred to it as "administrative assistant." Sam Cosentino, an administrative assistant to Peraica, testified that he "always considered [the plaintiff] Chief of Staff." Cosentino Dep. at 11. The Report and Grant of Authority issued upon Austin's appointment on December 4, 2002, shows that the President of the Cook County Board appointed Austin to the position of "Administrative Assistant to the Comm[issioner]."

On or about July 9, 2005, Austin was taken by ambulance from his Bridgeview residence to Advocate Christ Hospital. Austin testified at his deposition that he had to go to the hospital due to a drug overdose. He further indicated that he had used both cocaine and heroin on July 9, 2005. Austin was also arrested on July 9, 2005, for possession of drug paraphenalia and a hypodermic needle. Austin was never convicted of these charges and the arrests were expunged in February 2007.

On July 11, 2005, Austin completed a normal work day but did not see or speak to Peraica. Austin told Cosentino that he had gotten set up by the Bridgeview police and was falsely accused of possessing the drug paraphenalia. He also told Cosentino that he was in the

hospital because of his diabetes and that he had had a "sugar attack."  Cosentino Dep. at 34.

Also on July 11, Peraica sent Austin a letter suspending him without pay for thirty days. The July 11, 2005, letter stated as follows:

> Dear Mr. Austin:
>
> In light of your recent arrest and the pending charges against you, please be advised that you are hereby being suspended without pay for thirty (30) days effective July 11, 2005.
>
> You are hereby directed to the Employee Assistance Program (EAP) (312/263-2747) for drug testing and appropriate treatment of which you can utilize your Cook County sick pay benefits.
>
> I hope that you will take immediate steps to obtain suitable assistance and/or treatment as you may require during the leave of absence.

Exh. J, July 11, 2005, letter.  According to Austin, on July 12, 2005, he requested a meeting with Peraica, which was denied.  During his deposition, however, Peraica asserts that he did not refuse to meet with Austin.  Peraica Dep. at 104.  According to Pat Austin, Austin's mother and Peraica's secretary, Peraica told her on July 11, 2005, that if Austin was convicted of a felony, he would have to terminate Austin.  As noted earlier, Austin was never convicted and his arrests were expunged.

Pat Austin testified that on July 12, 2005, she asked Peraica if he had followed through on getting Austin placed in the EAP and he said he had taken care of it.  She also testified that during that same conversation, she asked Peraica if Austin was on FMLA leave and he told her that he would take care of it and, according to her, "he did take care of it."  Pat Austin Dep. at 24-25, Exh. I.  Peraica, however, denied during his deposition that he was aware of all communications with EAP regarding Austin and that he was unaware that Austin required an extended medical leave of absence.  Peraica Dep. at 103, Exh. D.

Pat Austin also testified that Austin called Peraica every day for a month but that Peraica refused to take his calls.

After Austin's arrest and the subsequent news coverage, Peraica concluded that Austin was "unable to carry out his functions as chief of staff."  Peraica Dep. at 95.  On or about August 2, 2005, Peraica sent Austin a letter that said:

> Dear Mr. Austin:
>
> Due to the circumstances surrounding your alleged drug overdose and the subsequent arrest as well as the pending criminal case against you, it is with deep

> regret that I must inform you that your employment with the office of 16th District
> County Commissioner will end as of the close of business on 8-12-05.

Exh. K, August 2, 2005, letter.

Austin attended counseling through Cook County's Employee Assistance Program from July 20, 2005, to February 18, 2006. Austin also completed six weeks of intensive treatment for substance abuse with Rush Behavioral Care of Palos.

On August 8, 2005, Rose Gomez, Austin's treating physician, completed a Disability Claim form, which stated that Austin would be able to return to work on September 30, 2005. Also on this date, Ellen Stone, who was treating Austin through the EAP, wrote a letter to Peraica informing him of Austin's status with the EAP since the initial referral on July 11, 2005. Stone further noted that in addition to the month off of work that had originally been recommended, Austin would need another 3 to 4 weeks off of work, based on Gomez's letter. On September 1, 2005, Stone sent a letter confirming that Austin had completed the program at Rush and that he was consistently meeting and exceeding the EAP's expectations. Peraica denied at his deposition that he was informed of all communications from the EAP.

Although Austin denies that he was suspended and then fired for alleged criminal activity and contends that he was terminated because of his drug use, Austin's amended complaint alleges that:

> Commissioner Peraica terminated the employment of the plaintiff for the same
> reason he was suspended, alleged criminal activity. Commissioner Peraica sited
> [sic] very specifically why the Plaintiff had been suspended and terminated, even
> though the Plaintiff did Not [sic] have his first date in court and always
> maintained his innocence.

Exh. B, Amended Compl. at ¶ 33.

Austin acknowledges that he was an at-will employee, though he says his employer was then-President Stroger, not Peraica. Austin Dep. at 41, Exh. E.

Mark Kilgannon, who was the head of human resources for Cook County from 1999 to 2006 and was the county's chief administrative officer from 2006 to December 2010, also gave a deposition in this case. Kilgannon testified that there was a list of 40 positions assigned to the elected county commissioners and that each individually-elected commissioner can terminate anyone in these 40 positions who is assigned to him or her without having any authority or permission from the president of Cook County. Kilgannon Dep. at 18.

Austin was paid by Cook County and received medical benefits from Cook County. Peraica did not have the authority to increase Austin's pay and, according to Kilgannon, Austin would have been entitled to FMLA leave like any other Cook County employee. Austin never

filled out any FMLA paperwork during or after his leave of absence in July 2005.

After Austin was arrested, Peraica asked Kilgannon to come to his office to discuss his options with respect to Austin. Kilgannon told Peraica that Austin was a *Shakman*-exempt employee and that Peraica had "some abilities" to terminate him without cause. Peraica believed that according to the widely published accounts and the local press, Austin was involved in a very embarrassing situation and could no longer fulfill the position of administrative assistant.

Another commissioner, Elizabeth Gorman, testified that she had latitude to discipline her own staff members and that she was not aware of any procedures she was supposed to follow with respect to any discipline of staff members.

## Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992). A court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Id.*

To successfully oppose a motion for summary judgment, however, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, it must demonstrate that a genuine issue of fact exists. *See id.* at 587; *see also* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.").

## Analysis

As previously noted, both parties moved for summary judgment with respect to the FMLA claims. Because the parties' arguments are essentially mirror images of each other, the court addresses them together. The court further notes that the parties' arguments are often less than clear. The court has attempted to address the arguments as fully as possible with the information provided to it.

Austin claims that the defendants violated his rights under the FMLA, which allows for 12 workweeks of leave during any 12-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." 29 U.S.C. §

2615(a)(1), or "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Thus, "[a] claim under the FMLA for wrongful termination can be brought under either a discrimination/retaliation or interference/entitlement theory; the difference is that the first type of claim requires proof of discriminatory or retaliatory intent while the latter requires only proof that the employer denied the employee his or her entitlements under the Act." *Kauffman v. Federal Exp. Corp.*, 426 F.3d 880, 884 (7th Cir. 2005) (citation omitted).

    1.   <u>Interference</u>

     According to Austin, the defendants interfered with his FMLA rights by terminating him (*i.e.*, denying him his right to take FMLA leave without risk of termination). To prevail on his interference claim, Austin must show that: (1) he was eligible for FMLA protection; (2) the defendant was covered by the FMLA; (3) he was entitled to FMLA leave; (4) he provided sufficient notice of his intent to take leave; and (5) the defendant denied him benefits to which he was entitled. *Ryl-Kuchar v. Care Centers, Inc.*, 565 F.3d 1027, 1030 (7th Cir. 2009) (citation omitted).

        a.   *Was Austin an "employee" under the FMLA and therefore eligible for FMLA leave?*

    The court first addresses the defendants' argument that Austin was not eligible for FMLA leave because he was a member of Peraica's personal staff, which would disqualify him as a protected employee under the FMLA. Specifically, the defendants note that the FMLA defines the term "employee" to have the same meaning as provided in subsection (e) of the Fair Labor Standards Act. 26 U.S.C. § 2611(3). The FLSA includes in the definition of employee:

        (C) any individual employed by a State, political subdivision of a State, or an interstate governmental agency, *other than* such an individual--

            (i) who is not subject to the civil service laws of the State, political subdivision, or agency which employs him; and
            (ii) who--
            (I) holds a public elective office of that State, political subdivision, or agency,
            (II) is selected by the holder of such an office to be a member of his personal staff,
            (III) is appointed by such an officeholder to serve on a policymaking level,
            (IV) is an immediate adviser to such an officeholder with respect to the constitutional or legal powers of his office, or
            (V) is an employee in the legislative branch or legislative body of that State, political subdivision, or agency and is not employed by the legislative library of such State, political subdivision, or

agency.

29 U.S.C. § 203(C) (emphasis added).

Thus, under this definition, Austin was an employee under the FMLA *unless*: (1) he is not subject to the civil service laws of Cook County; and (2) he falls under one of the other exceptions listed in subsections (I) through (V) above. The defendants assert that Austin was an at-will employee and that Peraica hired Austin as his personal chief of staff. As such, the defendants argue that Austin is not an "employee" for purposes of the FMLA, based on the definition above, and therefore was not eligible to take FMLA leave.

Although the parties do not parse the language of the statute and apply it to the facts of this case, the court will attempt to do so based on the facts and arguments the parties focused on in their briefs.

> (i)     Was Austin subject to the civil service laws of Cook County?

As noted above in the quoted language of the statute, an individual is not an employee as that term is used in the FMLA  if, first, he is not "subject to the civil service laws of the State, political subdivision, or agency which employs him . . . . " 29 U.S.C. § 203(C)(i).   From what the court can glean, the defendants' entire discussion of this section of the statute consists of the sentence "Plaintiff has admitted that he was an 'at will' employee and could be terminated for any legal reason."  Defendants' Memorandum at 5 (quoting SOF ¶ 22, which refers to Austin's Complaint, ¶ 25[1]).

Apparently, by noting that Austin has admitted that he is an at will employee, the defendants are arguing that Austin was not subject to the civil service laws of Cook County. Although the defendants fail to cite to any authority with respect to this issue, the court notes that if an employee is at will, then he is not subject to civil service laws or regulations. *Colaizzi v. Walker*, 812 F.2d 304, 306 (7th Cir. 1987) ("Neither [person] was protected by civil service regulations or by an employment contract; both were employees at will.").  Moreover, Austin admits he was an at-will employee of Cook County and therefore, the first statutory factor that would exclude Austin from the definition of employee–that he is not subject to the civil service laws of Cook County--is met.

> (ii)    Was Austin selected by Peraica to be a member of his personal
>         staff?

---

[1]The defendants cite to Austin's original complaint in support of their assertion that Austin admitted he was an at-will employee.  However, Austin amended his complaint, rendering the initial complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004).  Nevertheless, Austin testified at his deposition that he was an at-will employee (he says of Cook County, not Peraica), so the admission stands.

As to the second element which would exclude Austin from being an "employee" as defined by the FMLA, it appears that the defendants are relying on the exception stated in § 203(C)(ii)(II)–that the individual "is selected by the holder of such an office to be a member of his personal staff."

A.      *Shakman*-exempt

Before addressing whether Austin was a member of Peraica's personal staff, the court notes that the parties spend a significant amount of time debating in their responses to the statements of fact whether Austin was an administrative assistant or chief of staff. It is unclear to the court, but it appears that the parties dispute this fact because they believe that one position is subject to the *Shakman* consent decree while the other position is not. As background regarding the *Shakman* consent decree, the court notes that:

> In 1972, Defendant Cook County entered into a Consent Decree which, among other things, prohibited the County from "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor." On January 7, 1994, the County entered into a Consent Decree which incorporated the 1972 Consent Decree's prohibitions and extended those prohibitions to include the County's hiring practices, with certain exclusions.

*Coleman v. County of Cook*, No. 10 CV 2388, 2011 WL 2647891, at *7 (N.D. Ill. 2011) (citation omitted). Certain positions, however, fall outside the parameters of the consent decree and are considered "*Shakman*-exempt."

As already noted, it appears that the parties dispute which position Austin held because they believe that a chief of staff is *Shakman*-exempt while an administrative assistant is not. As an initial matter, this is an incorrect assumption and second, without more, whether Austin was *Shakman*-exempt fails to progress the inquiry as to whether Austin was an "employee" under the FMLA's statutory definition.

With respect to the issue of which positions are *Shakman*-exempt, under the *Shakman* decree, "[m]embers of boards and commissions appointed by the President, and *administrative assistants* to members of the County Board of Commissioners (up to 50 in total) who report to those members and not the President are also Exempt positions." Kilgannon Affidavit, Exh. M, attached *Shakman* judgment, ¶O(1) (emphasis added). Austin testified that he was an "administrative assistant to Commissioner Peraica." Austin Dep. (4-21-11) at 31. *See also* Exh. Z[2], Report and Grant of Authority dated December 4, 2002 (designating Austin as

---

[2]The parties submitted the wrong document under Exhibit Z. Upon inquiry by the court, the defendants delivered a courtesy copy of the correct document that is marked Exhibit Z.

"Administrative Assistant to the Comm[issioner]"). Thus, under the terms of the *Shakman* order, as an administrative assistant to a commissioner, Austin was a *Shakman*-exempt employee. Kilgannon Dep. at 36, Exh. M (Q: "Having looked through all these Exhibits? Does that refresh your recollection as to whether or not, for example, administrative assistant to the commissioner, is that a position that is *Shakman* exempt?" A: "I believe so, yes."); Kilgannon Dep. at 27, Exh. M (after examining the Decision to Hire form for Austin, Kilgannon stated "This tells me now that it [assistant to the commissioner] is a *Shakman* exempt employee.").

Having resolved that issue, to the extent that the defendants are contending that being *Shakman*-exempt is relevant to the determination of whether Austin was an "employee" under the FMLA, they fail to develop the position and the court will not do so for them.

Ultimately, the court notes that the determination of whether a position is *Shakman*-exempt in and of itself is unhelpful because "[a]lthough h[is] status as a *Shakman*-exempt employee may have enabled the county to fire h[im] for political reasons, h[is] status did not allow the county to fire h[im] for a discriminatory reason." *Collins v. Cook County*, No. 06 C 6651, 2008 WL 4925009, at *5 (N.D. Ill. Nov. 14, 2008) (citation omitted).

Accordingly, because the argument is undeveloped by the parties and in any event, seemingly irrelevant (because the parties have failed to establish the relevance) to the FMLA claim, the court need not address the issue of whether Austin was *Shakman*-exempt.

B. Was Austin a member of Peraica's personal staff?

Disregarding, then, the issue of whether Austin's position was *Shakman*-exempt, in support of their assertion that Austin was not an employee because he was a member of Peraica's personal staff, the defendants point to *Rutland v. Pepper*, 404 F.3d 921 (5th Cir. 2005). In *Rutland*, the Fifth Circuit noted that it has followed a list of "nonexhaustive factors" in determining whether a person is a member of the defendant's personal staff including:

> (1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Id.* at 924 (citation omitted). The *Rutland* court acknowledged that the case it relied upon was a Title VII case but that "courts considering personal staff exemptions to the FLSA or the FMLA may be guided by cases interpreting an analogous exemption to Title VII." *Rutland*, 404 F.3d at 924 n.2 (*citing Nichols v. Hurley*, 921 F.3d 1101, 1103 (10th Cir. 1990)).

As to the first factor, whether the elected official has plenary powers of appointment and removal, the parties disagree. Austin contends that he was not hired by Peraica and that, under Illinois law, he could only be appointed and terminated by the President of the Cook County Board. In support, Austin points to 55 ILCS 5/3-14001, which states:

> *Appointment of officers and employees; salaries and bond. All officers and employees of the county of Cook, in the classification hereinafter provided for, except those whose election or appointment is otherwise provided for by law, and except those enumerated in Section 3-14022, shall be appointed by the president of the board, according to the provisions of this Section.* The salaries or rate of compensation of all officers and employees of said county, when not otherwise provided by law, shall be fixed by the board of commissioners and shall be fixed prior to the adoption of the annual appropriation, and shall not be changed during the year for which the appropriation is made. The board of commissioners shall also determine whether any or what amount of bond any officer or employee shall give.

*Id.* (emphasis added).

Moreover, Austin relies on *Dunne v. Cook County*, 164 Ill. App. 3d 929 (Ill. App. Ct. 1987), in which the Illinois Appellate Court affirmed a circuit court judgment finding that "the power to hire and fire the Cook County employees in question is vested in the executive officer of Cook County," *id*. at 932, and declaring unconstitutional two Cook County ordinances that granted to board members the power to appoint or remove members of their staff. Finally, Austin points to the December 4, 2002, Report and Grant of Authority, corrected Exh. Z, which shows John H. Stroger as the appointing officer with respect to Austin's position as "administrative assistant to the commissioner."

Alternatively, the defendants assert that Austin ignores the exceptions specified in 55 ILCS 5/3-14001, which state that appointment is to be made by the president of the board except as to "those whose election or appointment is otherwise provided for by law" and except as to "those enumerated in Section 3-14022." 55 ILCS 5/4-14001. Neither of these, however, is applicable in the instant case. As to the latter, those positions enumerated in 5/3-14022, that section provides that certain offices and positions are exempted from the provisions of 55 ILCS 5/4-14001 including, as defendants note, "officers elected by the people." 55 ILCS 5/3-14022. But, Peraica, not Austin, was elected by the people.

With respect to the first exception, "those otherwise provided by law", the defendants assert that the *Shakman* decree is the law controlling Austin's appointment and termination. Specifically, the defendants quote ¶ O.1. of the *Shakman* order, which states that:

> The President may designate positions as Exempt Positions for up to 500 employees with the President and 40 employees with the District which meet the criteria of part (3) of this Paragraph O. Members of boards and commissions

> appointed by the President and administrative assistants to members of the County Board of Commissioners (up to 50 in total) who report to those members and not the President are also Exempt Positions."

*Shakman* decree at O.1., attached to Exh. M, affidavit of Kilgannon. The defendants then go on confusingly to state that:

> Judge Williams' clear separation of the President's authority and the Commissioner's authority when writing the decision indicates where Commissioners' derived their authority. This separation of authority was discussed by Kilgannon when he testified that the Cook County President does have the authority under the classification structure to oversee all elected officials. [T]herefore, the law controlling Plaintiff's hiring and removal is the Shakman consent decree which provided Commissioner Peraica with the authority to *terminate* Plaintiff.

Defendants' Response to Plaintiff's Motion at 3, Dkt. #187 (emphasis added). From what the court can gather from the preceding excerpt, the defendants are contending that the exception "those whose election or appointment is otherwise provided by law" applies because Austin's election or appointment was controlled by the *Shakman* decree, which allowed Peraica to terminate Austin. However, whether Peraica could *terminate* Austin appears irrelevant to this exception because the exception applies to the "election or appointment" of a position, not the termination. Thus, the court concludes, the defendants have not demonstrated that either of the exceptions to the rule that the president of the board appoints all employees of Cook County applies in this case.

Nevertheless, this conclusion does not mean that no genuine issue of material fact exists as to who had the power to appoint Austin–the first factor addressed to determine whether Austin was on Peraica's personal staff. Specifically, Kilgannon disagreed with Austin's counsel's position that Exhibit Z, the December 4, 2002 Report and Grant of Authority appointing Austin to the position of administrative assistant to a commissioner, which was signed by John Stroger, meant that Austin was selected or hired by Stroger. Instead, when asked whether the Report and Grant of Authority indicates that "Terry Austin was hired by President John Stroger," Kilgannon responded that "the selection process is not evident in this form." Kilgannon Dep. at 33. When Austin's attorney asked "You mean the decision to hire [the plaintiff] is not ultimately in at that time President Stroger's hands?" Kilgannon responded, "That's correct." According to Kilgannon, the Report and Grant of Authority was simply placing Austin on the payroll and did not mean that the person was selected by President Stroger. *Id*. at 34. Indeed, when asked if Peraica had the authority to promote from another department within Cook County, Kilgannon responded that Peraica could promote anyone to work for him in one of the positions assigned to him as a commissioner. *Id*. at 35.

Thus, a genuine issue of material fact exists as to who could appoint and terminate Austin from his position as an administrative assistant to then-Commissioner Peraica.

With respect to the other *Rutland* factors regarding whether an individual is a member of an elected official's personal staff, the parties do not delve deeply into the facts supporting them. For instance, with respect to the factor of whether the person is personally accountable only to the elected official, the defendants contend that the administrative assistants to commissioners report to the commissioners only and not the President of Cook County. But this assertion is unsupported by facts in this record which establish to whom Austin reported. The defendants also emphasize repeatedly that Austin's position was *Shakman*-exempt, but fail to specify how this relates to any of the "personal staff" factors detailed above. Finally, the defendants assert that Austin trained the rest of Peraica's staff, and that Peraica hired Austin as his "chief of staff." Again, however, the defendants fail to articulate how these facts show that Austin was part of Peraica's personal staff under the above-named factors.

For his part, Austin relies primarily on the argument addressed above that only the Commissioner had the power to appoint and terminate Austin, about which this court has found a genuine issue of material fact exists. Austin also states, without citation to the record, that he testified during his deposition that he was hired by the Cook County Board President and was not appointed by Peraica, that he made no policymaking decisions and was not advising Peraica with respect to the constitutional or legal powers of his office. With no citation to the record, the court has no way of verifying these purported facts and declines to sift through the record to (maybe) find them.

Ultimately, due to the genuine issue of material fact about who could appoint and terminate Austin, the parties' failure to fully address the other factors, and the fact that the employee exception is to be narrowly construed and is generally a highly factual inquiry, *Deneen v. City of Markham*, No. 91 C 5399, 1993 WL 181885, at *2 (N.D. Ill. May 26, 1993) (referring to the similar "personal staff" exception under Title VII), the court cannot conclude one way or another whether Austin was considered part of Peraica's personal staff and therefore not an "employee" under the FMLA.

This is true despite Austin's assertion that he was eligible for FMLA leave. In support, he points to the deposition testimony of Mark Kilgannon, who was the head of human resources and chief administrative officer for Cook County during the relevant time period. According to Mr. Kilgannon's testimony, even if Austin were *Shakman*-exempt (*i.e.*, selected by the holder of the office or appointed to serve on a policymaking level)–he still had the right to FMLA leave. *See* Kilgannon Dep. at 40. But Kilgannon was not presented with the statutory construction question of whether Austin was considered an "employee" under the FMLA, and his testimony cannot override that legal inquiry.

The only argument that the defendant makes with respect to the interference claim is that Austin cannot establish that he provided sufficient notice under the FMLA of his intent to take

leave.[3]  Even assuming arguendo that Austin was an employee under the FMLA, genuine issues of material fact exist with respect to whether Austin provided sufficient notice of his intent to take FMLA leave.  For example, Austin asserts that Peraica was aware from letters sent by Dr. Stone of the EAP that Austin needed to take six to eight weeks medical leave for treatment at Rush Behavioral Health.  However, Peraica testified that he was not aware of all communications from the EAP.  Because a genuine issue of material fact exists as to what Peraica knew and when, the issue of whether proper notice was provided cannot be decided at the summary judgment stage.

2.      Retaliation

        Austin also alleges that he was retaliated against for taking FMLA leave.  Because a genuine issue of material fact exists as to whether Austin is an employee under the FMLA and thus even eligible to assert an FMLA retaliation claim, the court declines to address the retaliation claim at this time.

---

[3]The defendants assert that simply because they "have not responded to each argument presented in Plaintiff's Memorandum [does not constitute] a waiver or consent to the arguments presented by Plaintiff," Response at 6, Dkt. #187.  They go on to state they they "stand on the facts and arguments provided to the Court in its prior motions, the statements of facts and Memorandum in Support of Defendants [sic] Motion for Summary Judgment."  *Id.*  Which motions, which facts and which arguments are the defendants referring to?  Austin does essentially the same thing by asserting in their response to the retaliation argument that "Austin has already set forth the arguments in his Memorandum in Support of his Motion for Summary Judgment."  Plaintiff's Response at 7, Dkt. #191.

        It is not this court's role to act as an advocate for the parties appearing before it. Parties who decide not to respond specifically to arguments and vaguely rely on other pleadings do so at their own peril.  As noted above, the court has attempted to do its best to address all of the parties' arguments and positions with the information presented to it, and the parties will be hard-pressed to convince the court after-the-fact that it misinterpreted their positions.

**Conclusion**

      For the reasons stated above, the parties' motions for summary judgment [184-1 and 189-1] are denied.  Status is set for November 22, 2011, at 11 a.m. in order to set a firm trial date. The parties are directed to discuss settlement with the assistance of the magistrate judge.

**Date**: November 16, 2011

                                        **Blanche M. Manning**
                                        **United States District Judge**